On May 17, 1983 and June 14, 1983, the Alabama Department of Environmental Management (ADEM) issued permits for the Perdido Quay and Broadmoor condominium projects respectively. These projects were to be built on Alabama's gulf coast at Perdido Key. ADEM's permit allowed construction one hundred feet from the mean high tide (coastline), and forty feet landward of the primary dune system. It found the primary dune system to be sixty feet from the coastline, and ordered artificial dunes to be constructed to aid the natural dune in reestablishing.
Some background on these permits will be helpful to the reader. In September 1979, Hurricane Frederic substantially eroded the dunes on Perdido Key. Thereafter, in November 1981, the former owner of the Perdido Quay and Broadmoor property requested that the Coastal Area Board (predecessor agency to ADEM) recognize and establish a "primary dune line" at sixty feet from the coastline and a construction setback one hundred feet from the coastline. In a hearing on March 12, 1982, witnesses testified that dunes were reestablishing at the sixty-foot mark. Although these witnesses were contradicted, the Coastal Area Board issued a policy statement concerning permit issuance. This policy statement said that the Board recognized a dune system establishing at the sixty-foot mark and that each construction project building permit would be reviewed on a case-by-case basis.
Almost a year after permits were issued for the Perdido Quay and Broadmoor projects, Save Our Dunes (SOD) requested a hearing before the Alabama Environmental Management Commission (Commission) to contest permit issuance on both projects. SOD was joined in this cause by the Alabama Conservancy, Sierra Club, League of Women Voters of Mobile and the League of Women Voters of Baldwin County (hereinafter referred to collectively as SOD). After adjudicatory hearings, the Commission upheld the validity of both permits. SOD appealed to the Circuit Court of Montgomery County. Judgments were entered affirming both orders of the Commission. Hence, SOD appeals to this court. The two cases have been consolidated for this appeal.
SOD contends that the condominium projects violate the Alabama Coastal Area Management Program. This program requires all construction in the area to take place forty feet behind the crestline of the primary dune system. The location of the line of dunes closest to the shore (primary dune system) is the point of disagreement between the parties. SOD contends that the projects violate the Coastal Area Management Program (Program) for three related reasons. First, the crestline of the natural primary dune system was never sixty feet from the coastline and thus, the construction of these condominiums is in violation of the Program. Secondly, the construction of a dune sixty feet from the coastline is not authorized by the Program because no natural dunes have ever been established at this point and in any event, the artificial dunes are not "successful" as required by the Coastal Area Board's policy statement. Thirdly, the policy statement establishing a construction setback forty feet behind an artificial dune would require an amendment to the current Alabama Coastal Program.
ADEM and the owners of the condominium projects contend that the primary dune system is successfully reestablishing with its crest sixty feet from the coastline. In short, the issue is whether the Commission was wrong in finding that a natural primary dune system exists sixty feet landward from the coastline.
Testimony from the Commission hearing established without contradiction that the primary dune system is unstable, volatile, and serves as a "sacrificial lamb" which is eroded in the event of a serious storm and lost during a major storm event such as a hurricane. Mr. Robert Snyder, an oceanographer *Page 523 
and professional engineer, conducted an inspection of the area. In his report to the Coastal Area Board, he stated that there was a natural buildup of sand and a voluntary establishment of sea oats occurring at a line approximately fifty-five feet from the coastline. He recommended that the Board establish this line as the primary dune line. Other experts also testified or submitted affidavits that the primary dune line was reestablishing itself after Hurricane Frederic at sixty feet from the coastline. Another expert, Dr. LeMehaute, stated he also had observed vegetation growing at the sixty-foot mark. Three experts, Mr. Snyder, Mr. Bundy and Dr. Lamb, said this was the return of a pre-hurricane dune. This testimony was contradicted by other expert witnesses presented by SOD. However, we are not in a position to weigh the evidence.
We find that the Commission's decision was not arbitrary, capricious or unreasonable, because it was supported by substantial evidence. Little Caesar's v. Alabama AlcoholicBeverage Control Board, 386 So.2d 224 (Ala.Civ.App.), aff'd inpart, reversed in part on other grounds, Ex parte LittleCaesar's, Inc., 386 So.2d 228 (Ala. 1979); Board of DentalExaminers v. King, 364 So.2d 311, 316 (Ala.Civ.App. 1977),rev'd on other grounds, Ex parte King, 364 So.2d 318 (Ala. 1978). Therefore, we affirm.
AFFIRMED.
BRADLEY, J., concurs.
HOLMES, J., recuses himself.